1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

CENTRAL DISTRICT OF CALIFORNIA

10
11

SHANNON DOUGLAS,                    )   Case No. EDCV 09-1184 JC
                                    )
12               Plaintiff,         )
                                    )   MEMORANDUM OPINION AND
13        v.                        )   ORDER OF REMAND
                                    )
14                                  )
   MICHAEL J. ASTRUE,               )
15   Commissioner of Social         )
     Security,                      )
16                                  )
                 Defendant.         )
17   _____)

18

19   **I.    SUMMARY**

20        On July 2, 2009, plaintiff Shannon Douglas ("plaintiff") filed a Complaint

21   seeking review of the Commissioner of Social Security's denial of plaintiff's

22   application for benefits.  The parties have consented to proceed before a United

23   States Magistrate Judge.

24        This matter is before the Court on the parties' cross motions for summary

25   judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26   Court has taken both motions under submission without oral argument.  See Fed.

27   R. Civ. P. 78; L.R. 7-15; July 6, 2009 Case Management Order ¶ 5.

28   ///

Based on the record as a whole and the applicable law, the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this Memorandum Opinion and Order of Remand.

## II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On July 6, 2006, plaintiff filed an application for Supplemental Security Income benefits.  (Administrative Record ("AR") 120-26).  Plaintiff asserted that she became disabled on August 2, 2004, due to bipolar disorder, depression, obsessive compulsive disorder, and anxiety and panic attacks.  (AR 146).  The Administrative Law Judge ("ALJ") examined the medical record and heard testimony from plaintiff, who was represented by counsel, on October 3, 2008.  (AR 15-35).

On December 10, 2008, the ALJ determined that plaintiff was not disabled through the date of the decision.  (AR 7-13).  Specifically, the ALJ found: (1) plaintiff suffered from the following severe impairments:  bipolar disorder, morbid obesity, and hypertension (AR 9); (2) plaintiff's impairments, considered singly or in combination, did not meet or medically equal one of the listed impairments (AR 9-10); (3) plaintiff retained the residual functional capacity to perform medium work with certain limitations (AR 26)[1]; and (4) plaintiff was capable of performing her past relevant work (AR 12).

The Appeals Council denied plaintiff's application for review.  (AR 1-3).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that she is unable to engage in any substantial gainful activity by reason of a medically determinable

---

[1]The ALJ determined that plaintiff was precluded from "climbing ladders, ropes or scaffolds.  In addition, [plaintiff] works best in non-production type work.  Finally, claimant must not be required to interact with the public (although working with 'known' co-workers is fine) and must not be required to work in or around crowds."  (AR 10).

physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit her ability to work?  If not, the claimant is not disabled.  If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.  If not, proceed to step four.

(4)    Does the claimant possess the residual functional capacity to perform her past relevant work?  If so, the claimant is not disabled.  If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow her to adjust to other work that exists in significant numbers in the national economy?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).  The claimant has the burden

1  of proof at steps one through four, and the Commissioner has the burden of proof

2  at step five.  Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400

3  F.3d at 679 (claimant carries initial burden of proving disability).

4       **B.    Standard of Review**

5       Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

6  benefits only if it is not supported by substantial evidence or if it is based on legal

7  error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir.

8  2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457

9  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

10  mind might accept as adequate to support a conclusion."  Richardson v. Perales,

11  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a

12  mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing

13  Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

14       To determine whether substantial evidence supports a finding, a court must

15  "'consider the record as a whole, weighing both evidence that supports and

16  evidence that detracts from the [Commissioner's] conclusion.'"  Aukland v.

17  Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d

18  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

19  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

20  of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

21  **IV.   DISCUSSION**

22       Plaintiff contends that the ALJ erred in determining at step four that

23  plaintiff is capable of performing her past relevant work as a personal care aide.

24  (Plaintiff's Motion at 3-5).  Specifically, plaintiff argues that the requirements of

25  the occupation conflict with the ALJ's determination that plaintiff's residual

26  functional capacity prevents her from "interact[ing] with the public (although

27  working with 'known' co-workers is fine)."  (AR 10).  The Court agrees that the

28  ALJ's step four determination is not supported by substantial evidence.

4

1  ALJs routinely rely on the Dictionary of Occupational Titles ("DOT") "in
2  determining the skill level of a claimant's past work, and in evaluating whether the
3  claimant is able to perform other work in the national economy."  Terry v.
4  Sullivan, 903 F.2d 1273, 1276 (9th Cir. 1990) (citations omitted); see also 20
5  C.F.R. §§ 404.1566(d)(1), 416.966(d)(1) (DOT is source of reliable job
6  information).  The DOT is the presumptive authority on job classifications.
7  Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995).  An ALJ may not rely on a
8  vocational expert's testimony regarding the requirements of a particular job
9  without first inquiring whether the testimony conflicts with the DOT, and if so, the
10  reasons therefor.  Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007)
11  (citing Social Security Ruling 00-4p ("[T]he adjudicator has an affirmative
12  responsibility to ask about any possible conflict between that [vocational expert]
13  evidence and information provided in the DOT.")).[2]  In order for an ALJ to accept
14  vocational expert testimony that contradicts the DOT, the record must contain
15  "persuasive evidence to support the deviation."  Pinto v. Massanari, 249 F.3d 840,
16  846 (9th Cir. 2001) (quoting Johnson, 60 F.3d at 1435).  Evidence sufficient to
17  permit such a deviation may be either specific findings of fact regarding the
18  claimant's residual functionality, or inferences drawn from the context of the
19  expert's testimony.  Light v. Social Security Administration, 119 F.3d 789, 793
20  (9th Cir.), as amended (1997) (citations omitted).

21  In this case, the ALJ adopted the vocational expert's finding that plaintiff
22  could perform her past relevant work as a personal care aide both as it is generally
23  performed and as plaintiff actually performed it.  (AR 12-13; see AR 33-34).  The
24  DOT describes that a personal care aide "[a]ccompanies ambulatory patients
25  outside [the] home, serving as guide, companion, and aide" and "[p]erforms [a]

26  _____

27  [2]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903
28  F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social
Security Administration and are entitled to some deference as long as they are consistent with the
Social Security Act and regulations.  Massachi, 486 F.3d at 1152 n.6.

1 variety of miscellaneous duties as requested, such as obtaining household supplies

2 and running errands." (DOT § 354.377-014[3]). These requirements potentially

3 conflict with plaintiff's restriction from "interact[ing] with the public (although

4 working with 'known' co-workers is fine)." The ALJ did not elicit any

5 explanation for this potential conflict from the vocational expert, and his written

6 decision provides no explanation as to how to resolve it. (See AR 12-13, 33-34).

7 Although there may be legitimate reasons why this occupation does not

8 necessarily require interaction with the public, there are none in the record. See

9 Harman v. Apfel, 211 F.3d 1172, 1177 (9th Cir. 2000) ("[J]udicial review in cases

10 under the Social Security Act is limited to a review of the administrative record for

11 a determination of whether the Commissioner's decision is supported by

12 substantial evidence in the record."). Thus, no persuasive evidence justifies the

13 ALJ's apparent departure from the DOT.

14       Similarly, the vocational expert did not explain how he concluded that

15 plaintiff's past work as actually performed comported with the requirement to

16 avoid interaction with the public. (See AR 33-34). Plaintiff did not testify about

17 the specific duties of her past work. (See AR 21-33). The only evidence in the

18 record concerning the duties of plaintiff's past work appears to be the descriptions

19 plaintiff provided on two forms, a "Disability Report – Adult" form and a "Work

20 History Report" form. (AR 145-58). These forms offered plaintiff the open-ended

21 opportunity to "[d]escribe" her job, and asked several specific questions, largely

22 about the exertional aspects of the job. (AR 147-48, 155). Aside from the

23 question of whether plaintiff supervised any other people as part of her job, none

24 of the questions relate to whether plaintiff was required to interact with the public.

25 (See id.). Moreover, plaintiff's short descriptions of her job do not indicate

26

27     [3]The vocational expert testified that the DOT description of the personal care aide

28 occupation was contained in a different section, 354.377-011. (AR 33). However, this section
does not appear to exist in the DOT, and defendant did not object to plaintiff's identification of
section 354.377-014. (Plaintiff's Motion at 4; Defendant's Motion at 5-7).

1    whether or not she was required to interact with the public.  She wrote, in full, that

2    she "showered patients, [got] patient[s] to and from all meals, answer[ed] phones,

3    [and] [made] files," and that she "attend[ed] to all residents."  (AR 147, 155).

4    These cursory descriptions do not exclude the possibility that plaintiff was

5    required to interact with the public.  On this record, the Court cannot conclude that

6    substantial evidence supports the ALJ's determination that plaintiff remains

7    capable of performing her past work as she actually performed it.

8         The ALJ's step four determinations that plaintiff can perform her past

9    relevant work as it is generally performed and as she actually performed it are not

10   supported by substantial evidence in the record.  Remand is warranted on this

11   issue.[4]

12   ///

13   ///

14   ///

15   ///

16   ///

17   ///

18   ///

19   ///

20   ───────────────────

21        [4]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's
     decision, except insofar as to determine that a reversal and remand for immediate payment of
22   benefits would not be appropriate.  The Court notes, however, that the consultative psychiatric
     examiner, Dr. Abejuela, did not review plaintiff's psychiatric or medical records.  (AR 185, 187,
23   191 ("This report should be correlated with psychiatric records available, as I do not have any
     records for comparison.")).  Dr. Abejuela concluded that plaintiff has "psychiatric limitations
24   rang[ing] from none to mild."  (AR 191)  In light of the fairly extensive psychiatric evidence in
     the record, and in light of the evidence that plaintiff experiences good days and bad days (see,
25   e.g., AR 137, 176, 178, 320), the Court is concerned that Dr. Abejuela's understanding of
     plaintiff's mental health may have been incomplete.  Moreover, none of plaintiff's treating
26   physicians expressed her limitations in functional terms that the ALJ could readily employ in his
     residual functional capacity analysis.  On remand, the ALJ is free to take whatever further action
27   is deemed appropriate to ensure that the decision is supported by substantial evidence in the
     record.
28

1  **V.      CONCLUSION**

2          For the foregoing reasons, the decision of the Commissioner of Social

3  Security is reversed in part, and this matter is remanded for further administrative

4  action consistent with this Opinion.[5]

5          LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:  September 15, 2010

7                                                    /s/

8                                          Honorable Jacqueline Chooljian
                                           UNITED STATES MAGISTRATE JUDGE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26      [5]When a court reverses an administrative determination, "the proper course, except in rare
circumstances, is to remand to the agency for additional investigation or explanation."

27  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
quotations omitted).  Remand is proper where, as here, additional administrative proceedings

28  could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
1989).

8